SIGNED.

Dated: November 6, 2012

*James M. Marlar*

**James M. Marlar, Chief Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| DANA LEE DUNCAN and DENISE MARGARET DUNCAN, | No. 2:11-bk-16577-JMM |
| | No. 2:11-bk-18633-JMM |
| Debtors. | |
| In re: | |
| DUNCOR, LLC, | Adversary No: 2:12-ap-00068-JMM |
| Debtor. | |
| KEVIN DERUSHA and VIRGINIA DERUSHA, | **MEMORANDUM DECISION** |
| Plaintiffs, | |
| v. | |
| DANA LEE DUNCAN and DENISE MARGARET DUNCAN, | |
| Defendants. | |

Before the court is the Debtors/Defendants' Motion for Summary Judgment. A hearing was held on October 31, 2012, at which both counsel attended, and argued their respective positions and discussed the issues with the court. After arguments concluded, the court took the matter under advisement for further review. The court now rules.

## JURISDICTION

This court has core jurisdiction over the matter before it. 28 U.S.C. § 157(b)(2)(J).

## PROCEDURE

The procedural nature of this case is critically important to how this motion is to be resolved.

### 1. Two Ch. 11 cases

The individual Debtors, Dana and Denise Duncan, filed individual ch. 11 cases on June 8, 2011. Their wholly-owned business, Duncor, LLC., filed its own ch. 11 on June 28, 2011. The two cases have been jointly administered (ECF No. 32, Duncor; ECF No. 33, Duncan), and usually heard in tandem, but they have not been substantively consolidated.

### 2. Confirmation of Plans

Duncor was the first to confirm its ch. 11 plan of reorganization, and the order confirming was entered on February 1, 2012 (ECF No. 170, 173, as amended). Since confirmation, the reorganization proceeded, was substantially consummated, and a final decree was entered on May 7, 2012. (ECF No. 83, Duncor).

In the Duncor case, the Plaintiffs in this action, Kevin and Virginia DeRusha, were neither listed as creditors, nor did they file a claim or otherwise participate in the case.

The Duncans, individually, confirmed their plan of reorganization on February 1, 2012 (ECF No. 169). Although the DeRushas were listed as creditors in the Schedules (ECF

2

Case 2:12-ap-00068-BMW    Doc 51    Filed 11/06/12    Entered 11/07/12 07:33:47    Desc
Main Document - Memorandum/Opinion    Page 2 of 10

No. 18 ($226,341.20), and filed a claim (Claim No. 2), they did not object to confirmation of the Duncan plan, nor otherwise participate in the <u>administrative</u> phase of the Duncan ch. 11.

The Duncan reorganization plan, confirmed on February 1, 2012 (ECF No. 169), has become final. No appeals were taken therefrom. To date, there is no evidence in the record to reflect that the plan is not operating as intended, but it is apparently still too early to enter a final decree.

In the Duncans' individual ch. 11, the DeRushas did not participate in the administrative case, did not object to the plan, and were treated as Class 5 creditors. No objection was filed by the Duncans to DeRushas' claim No. 2. Eventually, along with other classes, the Class 5 creditors voted in the statutory percentages to accept the Duncans' plan.[1] (ECF No. 154). 11 U.S.C. § 1126(c).

Thus, because the Duncans were able to achieve confirmation of their individual ch. 11 case, the provisions of their confirmed plan have now become the "new contract" for their creditors. See <u>Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n</u>, 997 F.2d 581, 588 (9th Cir. 1993) ("A reorganization plan resembles a consent decree and therefore, should be construed basically as a contract.") This includes the DeRusha allowed claim, which is included with the Class 5 group. 11 U.S.C. § 1141(a).

### **3. The Adversary Proceeding, No. 12-68**

The procedural anomaly here is that the DeRushas filed a timely complaint objecting to the Duncans' <u>entire</u> <u>discharge</u>. That complaint was filed on January 10, 2012,

---

[1] The Class 5 creditors will receive $25,000 over 10 years, which will be pro-rated among them. ECF No. 126, p.16:15-18.

3

which was eight days before the first date set to hear the plan confirmation – January 18, 2012. (ECF Nos. 134, 135, 141, 162, Duncan case). See Fed. R. Bankr. P. 4004(a) ("In a chapter 11 case, the complaint shall be filed no later than the first date set for the hearing on confirmation.")

The DeRushas' complaint properly referred to § 1141(d)(3) as being the controlling statute, and went further (as required) to reference what they felt the pertinent parts of § 727(a) were. That § 727(a) aspect of § 1141 required specificity as to which parts of § 727(a) were at issue. This the DeRushas also did, specifying subparts § 727(a)((2)(A) and (a)(4)(A).

## ISSUE

The threshold procedural issue in this case, and the one that must be answered prior to delving into any of the other substantive or procedural issues in this matter, is whether the limitations or scope of § 1141(d)(3) prevent the DeRusha non-dischargeability case from moving forward.

## DISCUSSION

### 1. § 1141(d)(3) - In General

In general, as far as challenges to an individual debtor's discharge are concerned, those challenges are very narrowly construed and limited to the specific circumstances set forth in the statute.

This is because, as the Debtors point out, courts will make every effort to guard a

4

Case 2:12-ap-00068-BMW    Doc 51    Filed 11/06/12    Entered 11/07/12 07:33:47    Desc
Main Document - Memorandum/Opinion    Page 4 of 10

debtor's discharge. See, e.g., Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167, 1168 (9th Cir. 2009), Bernard v. Sheaffer (In re Bernard), 96 F.3d 1279, 1281 (9th Cir. 1996); Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010); see also Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 730 (9th Cir. BAP 1999), aff'd, 5 Fed. Appx. 743 (9th Cir 2001).

This policy becomes even more restrictive when it is considered in the context of a confirmed individual ch. 11 plan. This is for two significant legal reasons. First, § 727 (objections to discharge), as a general rule, usually is applicable only to ch. 7 liquidation cases, and its provisions do not carry over to reorganizations in ch. 11. See 11 U.S.C. § 103(b). Second, in a ch. 11 case, before a case can be confirmed, a debtor is required to pay its creditors as much as, or more than they would stand to realize upon liquidation. 11 U.S.C. § 1129(a)(7). This is known colloquially as the "best interests of creditors test." The same "best interests" policy also guides individual "reorganizations" in ch. 13 cases. See U.S.C. § 1325(a)(4). In fact, in ch. 13 cases, there is no blanket § 727 challenge allowed at all; the most a creditor can do is seek the non-dischargeability only of its particular debt. See, e.g., 11 U.S.C. § 1328(a)(4); (c)(2).

Against this backdrop of bankruptcy policy, which is to protect an individual's discharge and provide for a voluntary repayment to creditors of more than they could realize in a liquidation, we now must study how § 1141(d) is designed to work within this statutory scheme.

### **2. Interpreting the Statute**

The United States Supreme Court has repeatedly instructed lower courts to only engage in statutory interpretation if the "plain meaning" of the statute is muddled, ambiguous or otherwise unclear to the professional reader. U.S. v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989). Therefore, the starting point is the statute itself. Here, the entirety of § 1141(d)(3) is:

> (3) The confirmation of a plan does not discharge a debtor if--
>
>     (A)    the plan provides for the liquidation of all or substantially all of the property of the estate;
>
>     (B)    the debtor does not engage in business after consummation of the plan; and
>
>     (C)    the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3).

Its applicable corollary statute is § 1141(d)(5), which mandates, in an individual ch. 11, that its general rule is that individuals do not gain a discharge until they complete "all payments under the plan . . . ." 11 U.S.C. § 1141(d)(5)(A).

In interpreting or following § 1141(d)(3), the court must first determine if the statute is ambiguous. It is not. It is quite understandable. In order for a § 727(a) challenge to be sustained, three elements must be met. This is because § 1141(d)(3) has three subparts to it, which are conjoined by the word "and." This means that, for a § 727(a) challenge to move forward under § 1141(d)(3)(C), a creditor must also show that the other two elements, (A) and (B), favor its position. The use of the word "and" in § 1141(d)(3), to include all segments of the subparts A, B and C, is one of the clearest and easiest statutory principles to apply. See In re First Magnus Fin. Corp., 403 B.R. 659, 665 (D. Ariz. 2009) (The connector "and" requires that both parts of a subsection must exist), affirming and citing in re First Magnus Fin Corp., 390 B.R. 667, 676 (Bankr. D. Ariz. 2008) (citing 1A SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 47:27 (7th ed. 2008)).

If any one of the three subparts cannot be shown, an individual creditor may not

6

Case 2:12-ap-00068-BMW   Doc 51   Filed 11/06/12   Entered 11/07/12 07:33:47   Desc
Main Document - Memorandum/Opinion   Page 6 of 10

proceed solely on the § 1141(d)(3)(C) prong (the § 727(a) feature of the statute). See <u>Matter of T-H New Orleans Ltd. P'ship</u>, 116 F.3d 790, 803 (5th Cir. 1997); <u>In re Berg</u>, 423 B.R. 671, 677 & n.27 (10th Cir. BAP 2010); <u>see also</u> <u>Grausz v. Sampson (In re Grausz)</u>, 63 Fed. Appx. 647, 650 (4th Cir. 2003) (lower court erred in failing to consider second element of § 1141(d)(3) before denying ch. 11 debtor's discharge). <u>See generally</u> 8 COLLIER ON BANKRUPTCY ¶ 1141.05[4] (16th ed. 2012).

Debtors do not meet the first two requirements. The first prong is that this must be a liquidation plan, and the second prong is that they will not engage in their business after consummation of the plan. To the contrary, this plan was filed to regenerate their business, a sign company known as Duncor, LLC, which they stated is proceeding "at a healthy pace." (Disclosure Statement dated November 18, 2011, p. 9:13, ECF No. 126). The individual plan is then funded from Duncor's business income as well as from Debtors' other earned income. The business filed its own chapter 11 case to reorganize. That case has been closed following plan confirmation and entry of a final decree.

The legislative history to § 1141(d) states:

> Paragraph (3) specifies that the debtor is not discharged by the confirmation of a plan if the plan is a liquidating plan and if the debtor would be denied a discharge in a liquidation case under Section 727. Specifically, if all or substantially all of the distribution under the plan is of all or substantially all of the property of the estate or the proceeds of it, if the business, if any, of the debtor does not continue, and if the debtor would be denied a discharge under section 727 (such as if the debtor were not an individual or if he had committed an act that would lead to denial of discharge), then the Chapter 11 discharge is not granted.

House Rep. No. 95-595, 95th Cong. 1st Sess. 418-19 (1977), reprinted in, 1978 U.S.C.C.A.N. 5963, 6374-75.

7
Case 2:12-ap-00068-BMW    Doc 51    Filed 11/06/12    Entered 11/07/12 07:33:47    Desc
Main Document - Memorandum/Opinion    Page 7 of 10

## Subsection A: The First Prong - Liquidation

The first prong of 1141(d)(3) states that "the plan provides for the liquidation of all or substantially all of the property of the estate."

Here, the Duncans' individual case does not provide for the liquidation of any of their individually owned assets. Their Disclosure Statement advises creditors that their primary source of income comes from Duncor, a sign company owned and operated by the Debtors. Through its own ch. 11, Duncor will continue to operate and hopefully repay its creditors. In so doing, it will continue to employ and pay its owners. Eventually, perhaps, if Duncor survives and thrives, the Duncans' equity interests in the LLC will also have value.

The Debtors' plan is not a liquidation plan. In fact, neither the Disclosure Statement nor the plan provides for any aspect of liquidation. Instead, they intend to retain their property and pay creditors more than they would realize upon liquidation. (ECF No. 126).

Similarly, the Duncans' plan has no liquidation features associated with it. (ECF No. 130). Moreover, it vests all property back into the Debtors' names, as of the effective date of the plan. (ECF No. 130, p. 10, item 3(a)).

Because the Duncans' plan does not provide for all or substantially all of their property to be liquidated, and instead is an ongoing payment plan with up to a 10-year payout term, the DeRushas cannot proceed with the § 727(a) portion of their complaint.

## Subsection B: The Second Prong – Business Does Not Continue

The second subpart of § 1141(d)(3) reads: "the debtor does not engage in business after consummation of the plan ." In this case, the Debtors will continue to earn income from

8

Case 2:12-ap-00068-BMW   Doc 51   Filed 11/06/12   Entered 11/07/12 07:33:47   Desc
Main Document - Memorandum/Opinion   Page 8 of 10

various sources, principally from the operation of Duncor, LLC. (Disclosure Statement, ECF No. 126, pp. 6-10); Plan, ECF No. 130, pp. 10-11).

Neither the plan, nor the Disclosure Statement, nor the history of this case and its aftermath, reflect any indication that the Debtors will not continue to own and operate Duncor, and ultimately pay their creditors in accordance with their confirmed plan.

Thus, unable to show that the Duncans do not intend to continue earning income, and then pay a portion of it to their creditors, consistent with their plan provisions, the DeRushas cannot satisfy this prong. As a consequence, they are curtailed in their ability to move against the Duncans on § 727(a) grounds.

### **The Third Prong – Objection to Discharge**

The facts argued, in the response to the motion for summary judgment, focus exclusively on the facts surrounding the allegations of the § 727 aspects of the Duncans' behavior.

But, as shown above, since the DeRushas cannot prove that subsections A and B apply, and because an objecting creditor must prove <u>all three</u>, it is unnecessary to dwell on, discuss or debate the third prong's facts.

### **CONCLUSION**

Because the DeRushas are unable to satisfy all three prongs of § 1141(d)(3), their adversary complaint (No. 12-68) must be dismissed. The Defendants are entitled to summary judgment, as a matter of law. A separate order will be entered, granting the Defendant Duncans' Motion for Summary Judgment, and dismissing the complaint. The trial date, scheduled for

1 November 14-15, 2012, will be vacated.

3    The order, entered simultaneously with this memorandum decision, will be this court's final order, and as such, is appealable. Fed. R. Bankr. P. 8002. Any appeal must be entered on the docket within 14 days after entry of the dismissal order. Any appeal requires the payment of an appeal fee of $ 298.00.

SIGNED AND DATED ABOVE.

To be NOTICED by the BNC ("Bankruptcy Noticing Center") to:
Attorney for Plaintiffs
Attorney for Defendants/Debtors
Office of the U.S. Trustee